# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA A. STAGGS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | 1:11cv0804 DLB<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Tina A. Staggs ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## **FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her application on July 31, 2008, alleging disability since May 1, 2007, due to bi-polar disorder, "ccms," scoliosis, bunions, back pain, hepatitis C, depression and anxiety. AR 117-124, 134-141. After her application was denied initially and on reconsideration,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 51, 55, 80-82. ALJ Laura Havens held a hearing on November 19, 2009, and issued a decision denying benefits on February 18, 2010. AR 15-26, 31-48. The Appeals Council denied review on February 23, 2011. AR 1-6.

<u>Hearing Testimony</u>

ALJ Havens held a hearing on November 19, 2009, in Stockton, California. Plaintiff appeared with her attorney, Patrick Kelly. Vocational expert ("VE") David Dettmer also appeared and testified. AR 31.

Plaintiff testified that she was born in 1960 and completed the eleventh grade. AR 34. Plaintiff could read the newspaper and perform simple addition and subtraction. AR 35. She lives in a house with her father-in-law and her girlfriend. Plaintiff sometimes needs help getting out of the bathtub and she cleans her bedroom. AR 35-36. She also does laundry, vacuums, uses the microwave and goes grocery shopping. AR 36. She watches television all day. AR 36.

Plaintiff was still taking methadone, which she has been on for two years. AR 37. She has a driver's license and thought that she could drive for about 45 minutes. Plaintiff goes to church once in a while, though she barely goes out at all. AR 37. Plaintiff has a hard time sleeping and is only able to sleep 2 hours at night and 4 hours total. AR 38. She spends most of her time in her room. AR 43.

Plaintiff testified that she was taking Seroquel, Effexor, Lisinopril, methadone, codeine and hydroxyzine. AR 39. Her medications cause dry mouth and sweating. Plaintiff thought that she could stand for about 20 minutes and sit for 30 minutes. She could lift 2 pounds. AR 39.

Plaintiff explained that the pain comes and goes in the region of her right lower back. With medication, she rated her pain at an 8. AR 40. Plaintiff has not yet undergone Interferon therapy for her hepatitis C. Her mental health problems and pain cause difficulties concentrating. AR 41.

When questioned by her attorney, Plaintiff testified that she takes Seroquel for hallucinations, such as thinking someone was talking to her. AR 41. She has been seeing a doctor for years for this problem and when her dosage is right, the medication helps. AR 42.

She explained that she doesn't know what it's like to be happy. AR 42. Plaintiff had a methamphetamine problem years ago but thought her life was back on track. AR 43.

For the first hypothetical, the ALJ asked the VE to assume someone of Plaintiff's age, education and background. This person could sit for 8 hours, stand for 3 hours, walk for 3 hours, and occasionally lift and carry 20 pounds. This person could never climb stairs or ladders and could never crouch, but could occasionally balance, stoop, bend, kneel and crawl. This person must avoid moderate exposure to heights, dust, fumes and gases. The VE responded that the inability to lift any weight frequently was unusual, but that this person could perform the light positions of office helper, with a 50 percent erosion, and cashier, with a 90 percent erosion. AR 44-45. For sedentary positions, this person could perform the position of small parts assembler, with a 75 percent erosion. AR 46. The VE explained that the erosions were based on the inability to lift any weight frequently. AR 46. The deviation from the Dictionary of Occupational Titles ("DOT") was supported by the VE's "30-plus years of rehab counseling." AR 46.

Plaintiff's attorney asked the VE to assume a person who could sit for 5 hours, stand up to 2 hours, and frequently and occasionally lift 10 pounds. This person would be absent from work more than 3 times per month. The VE testified that this person could not work. AR 46-47.

Plaintiff's attorney also asked whether light work required the ability to occasionally lift 20 pounds and frequently lift 10 pounds. The VE explained that light work is a combination of lifting, standing and walking and that a person doesn't necessarily have to be capable of lifting up to 10 pounds frequently. While the lifting inability would preclude performance of the full range of light work, it would not eliminate all light jobs. AR 47.

<u>Medical Record</u>

Plaintiff began receiving treatment at San Joaquin Behavioral Health in June 2007 for paranoid thoughts and auditory hallucinations. AR 220.

On September 6, 2007, Plaintiff was seen for an assessment after being evaluated in Crisis the night before. Plaintiff reported that she had been on the methadone program for 6

days. She was very anxious, restless and agitated. Plaintiff reported visual and auditory hallucinations and wanted to restart the medication she was taking in prison. AR 219.

Plaintiff returned on September 20, 2007. She was tearful, distracted, fearful and anxious. She was started on Seroquel. AR 218.

On November 16, 2007, Plaintiff stated that she was still anxious, but felt much better and was almost back to her normal self. She was diagnosed with psychosis, not otherwise specified, anxiety, not otherwise specified, and heroin dependence. Plaintiff was prescribed medication. AR 214-215.

Plaintiff was referred to Crisis on December 20, 2007. Her reliability was noted as "fair" and she was very vague in describing her symptoms. Plaintiff could not describe the voices she reported hearing and seemed more focused on "telling her life situation." Plaintiff had a full range of affect and her thoughts were organized. Her memory was grossly intact, though insight and judgment were limited. She received a provisional diagnosis of psychosis, not otherwise specified, and a history of substance abuse. Plaintiff was taking Seroquel and Neurontin, with the goal of decreasing auditory hallucinations. AR 226-228.

On March 14, 2008, Plaintiff reported that she was homeless and living with different relatives. Her affect was restricted and her speech was somewhat loud, but her thought content was organized. She was goal-directed and described herself as "very depressed." Plaintiff also described voices of unclear content. Insight and judgment were grossly intact. Plaintiff was diagnosed with depressive disorder, not otherwise specified and psychosis, not otherwise specified. Both disorders were possibly due to her history of substance dependence. She was instructed to continue her medications. AR 225.

Plaintiff was seen at San Joaquin Behavioral Health on May 15, 2008. She indicated that she needed to see a doctor to get her depression medication started again after incarceration. Plaintiff's mood was anxious and her speech was pressured. Her thoughts were racing, but she denied hallucinations. Her short-memory was impaired. Plaintiff was taking Seroquel, Effexor and Gabapentin. AR 209, 221.

A July 9, 2008, x-ray of Plaintiff's lumbar spine revealed degenerative changes, greatest at the L5-S1 facets. AR 204.

Plaintiff was seen at San Joaquin Behavioral Health on July 11, 2008. She reported some improvement in her depression, but still complained of hearing voices and talking to herself. Plaintiff was sleeping well with her medications. Her response to medications was noted as "mild to moderate" and she was instructed to continue. AR 223.

On August 26, 2008, Plaintiff went to San Joaquin Behavioral Health to complete disability forms. She complained of hearing voices but declined an offer to see the nurse. AR 207.

On October 7, 2008, Plaintiff saw Bradley Daigle, M.D., for a consultive psychiatric examination. Plaintiff complained predominately of orthopedic problems and pain involving her lower spine, but she was "also obviously a psychiatric case." She reported having problems walking and carrying things since breaking her tailbone at age 9. She also has a long history of drug addition, initially methamphetamine and then heroin. Plaintiff has been on a methadone maintenance program for the last year or two. She was in prison for drug offenses for much of the 1990s, with her last release in 2004. Plaintiff was currently off parole and probation. Plaintiff reported hearing voices but said that medications help quiet them. She also reported depression, trouble maintaining focus, poor memory, poor sleep and off and on suicidal ruminations. Plaintiff reported that she goes out alone without any difficulty, and does her own household chores, light shopping and cooking. Plaintiff also watches a lot of television and likes to be with people "depending" on her mood. AR 229-231.

On mental status examination, Plaintiff was cooperative but slightly agitated with a "somewhat pleading tone, clearly in pursuit of benefits apologetically explaining that she wasn't awarded SSI before because she missed appointments." Plaintiff was coherent and organized and revealed the presence of unintelligible auditory hallucinations. Her mood was depressed and anxious, affect was moderately agitated and she was generally scattered and labile. There was brief tearfulness but no active suicidal thought. Speech was normal and Plaintiff appeared to be of low average intelligence. Insight and judgment appeared limited. AR 231-233.

5

Dr. Daigle diagnosed chronic polysubstance abuse, in remission, on methadone, major depression, recurrent, with psychotic features, partially treated and possible borderline intellectual functioning. Her GAF was 55. He noted that Plaintiff wanted to try and get off methadone, but she was having a lot of emotional distress with anxiety, depression and hearing voices. Her treatment with Effexor and Seroquel did not have a complete effect and she was having a lot of situational problems. With further treatment, Plaintiff may be able to approach employment, but this option is guarded and she did not appear employable at the present time. AR 233.

Based upon the examination, Dr. Daigle opined that Plaintiff was slightly limited in her ability to understand, remember and carry out simple 1 or 2 step instructions and moderately limited in her ability to follow detailed and complex instructions, relate and interact with supervisors, co-workers and the public, maintain concentration and attention, persistence and pace, associate with day to day work activity and adapt to the stresses common to a normal work environment. AR 233-234.

On October 20, 2008, a State Agency physician determined that Plaintiff's mental impairment was not severe. P. Davis, Pys.D., noted that the consultive examination was overly restrictive because the mental status examination was adequate, her activities of daily living were independent and the GAF was too low due to inconsistency. AR 248.

Also on October 20, 2008, Plaintiff saw Anthony Ferrari, M.D., and complained of chronic low back pain and asthma. She reported smoking a pack and a half of cigarettes a day and although she stated that she was an alcoholic and hadn't had a drink in quite some time, she also stated that she has a drink "now and then." Plaintiff reported that she last used heroin a year ago and that she was now on a methadone program. She admitted to depression with occasional suicidal ruminations. AR 250-251.

On examination, Plaintiff was morbidly obese and looked much older than her stated age. She was "rather markedly" short of breath at rest and had a chronic cough with a tremendous amount of mucus at times. Plaintiff was restless and appeared to be quite distraught. She had abundant rales, ronchi and wheezes in her lungs posteriorly and anteriorly. Plaintiff had minimal

tenderness and spasm of the lower back. Range of motion was approximately 50 percent of normal. There was kyphosis and straight leg raise test was positive bilaterally. Motor strength was fair bilaterally and strength was 4/5 in all muscle groups. Sensory examination was grossly intact and reflexes were normal. Gait was ponderous, though there was no need for an assistive device. Plaintiff needed considerable help getting on and off the examination table. AR 252-253.

Dr. Ferrari diagnosed chronic bronchial asthma, chronic bronchitis, hypertensive arteriosclerotic heart disease, morbid exogenous obesity, chronic alcoholism, Laennec's cirrhosis, heroin addiction with methadone program in place and umbilical hernia. He opined that Plaintiff could walk up to 3 hours on a noncontinuous basis, stand up to 3 hours on a noncontinuous basis and sit for up to 8 hours on a noncontinuous basis. Plaintiff could lift and carry up to 20 pounds occasionally. She could bend, kneel, crawl and balance occasionally, but could never crouch or crawl. Plaintiff could frequently reach, handle, finger and feel and would have environmental limitations to dusts, gases and heights. AR 254.

On November 4, 2008, State Agency S. Amon, M.D., physician completed a Physical Residual Functional Capacity form. Dr. Amon opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk at least 2 hours and sit for about 6 hours. Plaintiff could frequently balance, occasionally climb ramps and stairs, stoop, kneel, crouch and crawl and never climb ladders, ropes or scaffolds. Plaintiff had to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. AR 258-262. In an attached case analysis, Dr. Amon reviewed the medical records and concluded that Plaintiff was capable of sedentary work and recommended a sedentary residual functional capacity with environmental restrictions. AR 263-266.

Plaintiff returned to San Joaquin Behavioral Health on November 21, 2008. She had missed a prior appointment and had been out of medication for 2 or 3 days. Plaintiff complained of difficulty sleeping, mood swings and hearing voices. On examination, Plaintiff was fidgety and breathing shallow. Her mood was anxious and she described hearing voices, though she did

1  not know what they were saying.  Plaintiff's Seroquel, Neurontin and Effexor were refilled.  AR
2  291, 296.
3       On December 26, 2008, Plaintiff reported feeling very sad because she had relapsed.  Her
4  affect was constricted but thoughts were organized.  Plaintiff was having difficulty staying clean,
5  possibly because of her environment and unstable residence.  She was instructed to continue
6  some medications and was counseled on staying away from certain "friends."  AR 329.
7       On January 13, 2009, State Agency physician F. L. Williams, M.D., affirmed the prior
8  sedentary residual functional capacity.  AR 300-301.
9       Plaintiff continued complaining of back pain in December 2008 and February, March and
10 April 2009.  Aziz Khambati, M.D., diagnosed chronic back pain and prescribed Vicodin, Tylenol
11 #3 and Ibuprofen 800 mg.  She was also diagnosed with chronic obstructive pulmonary disease
12 ("COPD") and depression during this time.  Dr. Khambati also prescribed inhalers.  AR 280-283.
13      Plaintiff was seen at San Joaquin Behavioral Health on March 26, 2009.  Plaintiff had no
14 complaints but reported that she did not have insurance or money to pay for her medical care.  On
15 examination, Plaintiff was breathing heavily and walked with a cane.  Her affect was shunted and
16 speech was delayed.  Insight and judgment were impaired, as Plaintiff was buying cigarettes
17 instead of medications for asthma.  Plaintiff was mentally stable but physically compromised.
18 She was counseled on the need to take care of her asthma.  AR 328.
19      On July 22, 2009, Dr. Khambati completed a Medical Source Statement.  He indicated
20 that he first saw Plaintiff on July 8, 2008, and last saw her on July 22, 2009.  Her diagnoses
21 include back pain, bilateral foot pain, depression and COPD and her prognosis was guarded.
22 Plaintiff was taking Seroquel, Ibuprofen, Buspar, Effexor, and Tylenol with Codeine, and using 2
23 inhalers.  He rated Plaintiff's pain at an 8-9 and her fatigue at a 5.  Medication has not been able
24 to completely relieve the pain.  Dr. Khambati opined that Plaintiff could sit for 5 hours in a day
25 and stand and/or walk for 0-2 hours.  She could not sit continuously.  Plaintiff could frequently
26 lift less than 10 pounds and occasionally lift 10 pounds.  Plaintiff had significant limitations in
27 repetitive reaching, handling and fingering because her hands go to sleep.  When walking,
28 Plaintiff would need either a walker with a seat or a wheelchair.  He did not believe that Plaintiff

could perform a full time job that required activity on a sustained basis and opined that she would have psychological and environmental limitations. He also believed that Plaintiff would be absent more than 3 times per month and that she has been this limited since July 8, 2008. AR 331-334.

Plaintiff returned to San Joaquin Behavioral Health on July 24, 2009. She complained of auditory hallucinations but was very vague in describing them. Plaintiff "insisted" on getting Seroquel for the voices. She continued to smoke and was living at a friend's house. On examination, her affect was neutral, with good eye contact. Speech was normal in rate and volume. Insight and judgment were adequate. Plaintiff was diagnosed with depressive disorder, not otherwise specified, and psychosis, not otherwise specified. She was instructed to discontinue daytime use of Seroquel due to obvious weight gain and no clear need, start Vistral for anxiety and continue Effexor. AR 336.

Plaintiff saw Dr. Khambati on June 5, 2009. She complained of back and left ankle pain and needed medication refills. AR 342.

She returned to Dr. Khambati on July 22, 2009, needing medication refills and complaining of back pain. Plaintiff was in no acute distress and her examination appeared normal. He diagnosed chronic back pain, COPD and depression and prescribed Tylenol #3. AR 341.

On August 21, 2009, Plaintiff saw Dr. Khambati and complained of back and stomach pain. She was diagnosed with chronic back pain and COPD and prescribed Tylenol #3. AR 340.

Plaintiff saw Dr. Khambati again on September 10, 2009. She needed medication refills and complained of stomach pain. On examination, she was in no acute distress and her lungs and heart were normal. Plaintiff's blood pressure was elevated. Dr. Khambati diagnosed COPD, hypertension, chronic low back pain and hepatitis C. AR 339.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of liver disease, hepatitis C, back pain and obesity. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to sit for 8 hours, stand for 3 hours and walk for 3 hours. She could lift and

1  carry 20 pounds occasionally, occasionally balance, stoop/bend, kneel and crawl but never climb
2  or crouch.  She also needed to avoid moderate exposure to heights, dust, fumes and gases.  With
3  this RFC, the ALJ found that Plaintiff could perform a significant number of jobs in the national
4  economy.  AR 20-24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

10

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g). Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (liver disease, hepatitis C, back pain and obesity) based on the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) can perform jobs that exist in significant numbers in the national economy. AR 20-24.

Here, Plaintiff argues that the ALJ erred (1) at the step five finding; and (2) in assessing her credibility.

**DISCUSSION**

A.   Step Five Finding

Plaintiff contends that the ALJ's step five finding was not supported by substantial evidence. Specifically, she argues that the Grids required a finding that she could not work. Plaintiff also argues that the VE did not reasonably explain the conflict between his testimony and the DOT.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of*

*Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

Plaintiff does not dispute the RFC, which allowed for 8 hours of sitting, 3 hours of standing, 3 hours of walking and 20 pounds of occasional lifting. Plaintiff could not lift any amount of weight frequently and had additional non-exertional limitations. The RFC therefore allowed for slightly more than sedentary work, but not the full range of light work. In such situations, the Commissioner may base a finding of "not disabled" on the fact that a plaintiff can perform some, although not all, of a particular category of work only if such a finding is supported by both the medical evidence and the testimony of a vocational expert. *Desrosiers v. Secretary of Housing and Health Services,* 846 F.2d 573, 580 (9th Cir. 1988) (citations omitted). To make such a finding the Commissioner must call a vocational expert and hear testimony as to whether the plaintiff can perform enough jobs in the national economy to warrant a finding of "not disabled." *Desrosiers*, 846 F.2d at 580; SSR 83-12.

At step five, the ALJ first noted that *if* Plaintiff could perform the full range of light work, a finding of not disabled would be directed by Rule 202.17. AR 24. The ALJ explained, however, that Plaintiff's additional limitations impeded her ability to perform all or substantially all of the requirements of light work. AR 24-25. The ALJ then correctly determined that the testimony of a VE was necessary to determine the extent of the erosion. AR 25. The VE identified the light positions of officer helper, with a 50 percent erosion (8,000 jobs in California after erosion), and cashier, with a 90 percent erosion (11,000 jobs in California after erosion), as well as the sedentary position of small parts assembler, with a 75 percent erosion (4,250 jobs in California yes after erosion). AR 44-46. Based on this testimony, the ALJ determined that Plaintiff was not disabled. AR 25.

1.   *Use of Rule 202.17*

Plaintiff first argues that the ALJ should have used Rule 201.09, based on a limitation to sedentary work, as a framework for the decision based on the VE's testimony of significant erosion. Rule 201.09 would direct a finding of disabled, but it is applicable where a claimant is

between the ages of 50-54.  Though Plaintiff asserts that she would be entitled to a finding of disabled as of her 50th birthday, June 12, 2010, she makes no argument as to why the ALJ should have advanced her age category on the date of the decision, February 18, 2010.  AR 26.  20 C.F.R. § 416.963(b).  Rule 201.18, which would apply where a claimant is limited to sedentary work and in Plaintiff's age category of 45-49, directs a finding of not disabled.  Therefore, for Plaintiff's age category, the rule for either sedentary work or light work directs a finding of not disabled.

Moreover, even if Plaintiff's age category is advanced to "closely approaching advanced age" and the applicable sedentary and light Grid rules directed different results, the VE testimony will "guide the decision" on whether significant jobs exist in the national economy.  *Watts v. Astrue*, 2010 WL 1854075, * 7 (C.D. Cal. 2010).  In *Moore v. Apfel*, the Ninth Circuit rejected Plaintiff's argument that the light work category was so eroded that it was essentially equivalent to the sedentary category.  *Moore v. Apfel*, 216 F.3d 864, 870-871 (9th Cir. 2000).  The Court held that "as Moore suffered from both exertional and nonexertional limitations, the ALJ could not have made that determination before relying upon the VE."  *Id.*  The Court continued, "SSR 83-12 does not mandate a finding of disabled. . . [i]nstead, it mandates the use of a VE." *Id.* at 871.  Therefore, the "framework" upon which Plaintiff relies simply required the use of a VE to determine the extent of erosion of the light occupational base.  The ALJ followed this requirement and ultimately based her ruling on the jobs identified by the VE.

To the extent that Plaintiff relies on the Program Operations Manual System ("POMS") DI 25001.001.B.71 to support her argument that the ALJ should have relied on the sedentary rule, the document does not change the applicable law.  While POMS may be "entitled to respect" to the extent it provides a persuasive interpretation of an ambiguous regulation, it "does not impose judicially enforceable duties on either this Court or the ALJ."  *Carillo-Yeras v. Astrue*, -- F.3d --, 2011 WL 5041912, *3 (9th Cir. 2011) (internal citations omitted).  As explained above, the ALJ followed the applicable regulations and case law, and POMS does not change that result.

2.  *Deviation from DOT*

In the second part of Plaintiff's argument, she argues that the explanation given by the VE for the conflict between his testimony and the DOT was not reasonable.

Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the [ Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p). Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* Where the ALJ fails to ask the VE if the positions are consistent with the DOT, the Court is unable to determine whether substantial evidence supports the ALJ's finding at step five. *Id.*

Here, the VE explained that the primary limiting factor was the preclusion from frequent lifting. AR 46. When asked what he based the deviation from the DOT on, he responded, "My 30-plus years of rehab counseling." AR 46. Plaintiff's attorney also asked the VE to explain the requirements of light work. The VE explained that light work did not require the ability to lift 20 pounds occasionally *and* 10 pounds frequently, but rather was a "combination of the lifting and standing and walking." AR 47. The VE confirmed that a claimant would not have to be capable of lifting 10 pounds frequently to perform a light position, though not all jobs in the light category would be available. The ALJ relied on this testimony in her decision. AR 25.

Plaintiff argues that citing his 30 years as a rehab counselor is not a "reasonable explanation." She also argues that the light positions of cashier and office helper require 6 hours of standing and walking, more than the 3 hours allowed by her RFC, and that no explanation was offered for this conflict.

Plaintiff is correct that the deviation focused on the lifting requirement. It does not appear, however, that there is necessarily a conflict with the standing and walking requirements. The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours per day. SSR 83-10. Similarly, light work as defined by the DOT requires "walking or standing to a significant degree." *Dictionary of Occupational Titles, Appendix C.* Plaintiff's

14

RFC allowed for 3 hours of standing and 3 hours of walking, for a total of 6 hours per day of "standing or walking."

As for the VE's explanation based on his 30 years of experience, the VE expounded on the rationale in his responses to Plaintiff's attorney's questions. He explained that light work did not require the ability to lift 20 pounds occasionally *and* 10 pounds frequently, but rather was a "combination of the lifting and standing and walking." AR 47. He further explained that a claimant would not have to be capable of lifting 10 pounds frequently to perform a light position, though not all jobs in the light category would be available. AR 47. The totality of the VE's testimony was sufficient to resolve the conflict.

In any event, the Court notes that even if the conflict was not properly resolved for the light positions, any error was harmless because a significant number (4,250) of sedentary positions remained available. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion).

Based on the above, the Court finds that the ALJ's step five analysis was supported by substantial evidence and free of legal error.

B.   Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject her testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the

statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ began the credibility discussion by explaining that Plaintiff described daily activities which were not limited to the extent one would expect. AR 23. For example, in her September 2008 function report, Plaintiff stated that she did laundry, washed dishes, prepared simple meals, cleaned her bedroom and bathroom, vacuumed, watered porch plants and shopped. AR 160-167. Indeed, Plaintiff testified during the hearing that she cleans her bedroom, does laundry, vacuums, uses the microwave and goes grocery shopping. AR 35-36. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ next explained that in July 2008, Plaintiff's doctor wrote that she was going to Disneyland for several days, and activity that the ALJ characterized as being "at odds with the claimant's allegations of 'extreme' pain and limitations." AR 23. Plaintiff argues that the date of the notation predates her July 31, 2008, disability application, and that her trip was not "particularly successful" as she continued her treatment. Opening Brief, at 16. Plaintiff, however, claimed disability since May 2007. Nonetheless, the ALJ was entitled to consider her activities in assessing her testimony.

The ALJ also notes that in October 2008, an examining physician reported that Plaintiff attended church, was able to handle her own bills and money and took care of her own self-needs. AR 23. The ALJ correctly reports that on October 7, 2008, Dr. Daigle stated that Plaintiff takes care of her own self-care, goes out alone without any difficulty, goes to church, handles her own bills and money, and does her own household chores, light shopping and cooking. AR 230-231. *See eg.*, *Valentine v. Comm'r Soc. Secy.*, 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ recognized that this evidence did not suggest Valentine could return to his old job at Cummins,

but she thought it did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

The ALJ's credibility analysis was supported by substantial evidence and was free of legal error.  Though Plaintiff may disagree with the discussion, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Tina A. Staggs.

IT IS SO ORDERED.

Dated:   **April 6, 2012**              /s/ **Dennis L. Beck**
                                             UNITED STATES MAGISTRATE JUDGE